IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA CHAVEZ, BERNADETTE JOHNSON, KEITH DISMUKES, and LATASHA TURNER, individually and on behalf of a class of persons similarly situated, | ) ) ) ) ) ) | No. 12-cv-5563 |
| Plaintiffs, | ) ) | Judge Joan B. Gottschall |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| HAT WORLD, INC., a Minnesota corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on two different discovery motions referred to me for ruling by the district judge: plaintiffs' motion for protective order quashing subpoenas [dkt. 54] and plaintiffs' motion to compel [dkt. 52]. For the reasons stated below, both motions are granted in their entirety.

I. **Background**

This case is a putative class action brought pursuant to the Fair Labor Standards Act ("the FLSA")[1] and the Illinois Minimum Wage Law ("IMWL").[2] Plaintiffs allege that they worked for defendant Hat World as store managers and were classified as exempt employees pursuant to the

---

[1] 29 U.S.C. § 201 *et seq.*
[2] 820 Ill. Comp. Stat. § 105/1 *et seq.*

executive exemptions of the FLSA,[3] and the IMWL.[4] Plaintiffs allege that Hat World was not entitled to invoke this exemption (which resulted in plaintiffs not receiving overtime pay for hours exceeding forty) because they did not customarily and regularly direct the work of two or more employees. In the Second Amended Complaint, plaintiffs estimate the number of hours they worked to be approximately forty-five hours per week, or five overtime hours.

This case will turn on whether the exemption Hat World has invoked applies to plaintiffs and any additional similarly situated plaintiffs who may become members of a class certified by the district judge. This analysis focuses on whether the employees "regularly and customarily" direct "the work of two or more other employees" within the applicable Hat World store.[5] Although the Seventh Circuit has not yet ruled on this precise issue, at least one judge in our district has opined that to satisfy the regularly and customary prong of the regulation the employee must supervise 80 hours of subordinate work (the equivalent of two full time employees) at least 80% of the time, or the "80/80" rule.[6] Plaintiffs in this case contend that they did not meet this requirement and therefore should not have been exempted from overtime pay.

**II.    Motion to Quash Subpoenas**

The first motion plaintiff filed is a motion to quash subpoenas. Hat World has served these subpoenas on various employers and potential employers of plaintiffs. These subpoenas require the respondents to produce "all documents relating to [plaintiff's] application for employment...including without limitation any personal statements, descriptions of work history, descriptions of work experience, resumes, job applications and/or other documents provided to you

---

[3] 29 U.S.C. § 213(a)(1).
[4] 820 Ill. Comp. Stat. 105/4A(2)(E).
[5] 59 C.F.R. § 541.1(f).
[6] *Perez v. Radioshak Corp.*, 386 F. Supp. 2d 982-83, 992 (N.D. Ill. 2005).

by [plaintiff] and "all documents relating to [Plaintiff's] previous employment with Hat World, Inc. D/b/a Lids." Plaintiffs raise several objections to these subpoenas, the enforcement of which the Court stayed pending the resolution of this motion. The first is that Hat World originally requested the information from them in two discovery requests, but never complained that the production was deficient prior to serving these subpoenas. The first of these (Interrogatory No. 4) asked plaintiffs to identify any efforts to obtain employment from employers other than Hat World since beginning their employment. Although plaintiffs objected to the relevance of this request, they did provide the names of these employers to Hat World. The second request (Request for Production No. 15) asked plaintiffs to produce "all documents that relate to your efforts to obtain employment from any employer other than Hat World since your first date of employment with Hat World." Plaintiff agreed to produce some documents related to this request, but also objected to the relevance of these materials. Plaintiff contends that Hat World, which neither complained about their responsive production, nor attempted to litigate the objections, essentially jumped the gun when it served these subpoenas on employers. Given the potential for harassment and intimidation when a party targets a current or prospective employer of another party for employment information, plaintiffs argue that Hat World should have discussed the matter with them first and tried to resolve the discovery dispute. Plaintiffs further argue that there was no attempt to "meet and confer" regarding plaintiffs' objections to the subpoenas before they were served on the employers in question. Finally, plaintiffs contend that the information is essentially irrelevant because the merits of the case will not turn on plaintiffs' view of whether they were managers and, therefore, potentially exempt from the application of the FLSA's requirement of overtime pay but, rather, whether they met the specific 80/80 rule. Thus, plaintiffs contend that the information is marginally relevant at best. And the

negative impact on the employees resulting from their current or former employers knowing they are embroiled in litigation against a previous employer far outweighs the relevance.

As I expressed in open court, I am troubled by the timing of these subpoenas. It was clear to the defendant that the plaintiffs objected to the relevance of this information. Instead of addressing this question directly after reviewing a production of documents that did not contain all of the requested materials, and obtaining a ruling on the relevance objection from the Court, they instead chose to serve the subpoenas on third parties. Hat World knew that plaintiffs objected to the relevance of this information given the responses to discovery, but chose to proceed with the most invasive discovery option without even discussing the matter further with plaintiffs. It seems likely that had there been a true "meet and confer" on this issue, a compromise might have been reached. For example, plaintiffs may have agreed to produce some (or all) of this information directly.

Courts have recognized that a party has standing to quash a subpoena like those before the Court because they have a personal right to information contained in their own employment records housed with third parties.[7] The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26 (b)(1); that is, discovery is relevant if it appears "reasonably calculated to lead to the discovery of admissible evidence." Hat World claims that this information is relevant because plaintiffs' view of their job responsibilities (as managers) and how many people they believe that they manage bears on the issue of exemption from overtime. The Court agrees that this information is *marginally* relevant. Ultimately, however, this case will not turn on plaintiffs' subjective view of their job responsibilities but, instead, on whether Hat World can show that plaintiffs managed employees within the requisite 80/80 rule regardless of plaintiffs'

---

[7]*See, e.g, Barrington v. Mortgage IT, Inc.,* 2007 WL 4370647, *2 (S.D. Fla. 2007)(collecting cases).

subjective impressions of their job responsibilities. Accordingly, the Court grants plaintiffs' motion to quash the third party subpoenas, but will require plaintiffs to answer the written discovery directed to them on these issues.

### III. Motion for Pre-Certification Discovery Concerning Similarly Situated Employees

The second motion before the Court is whether defendants have to produce time records sufficient to show whether plaintiffs (and other potential class members) supervised employees within the 80/80 rule. Hat World claims that such a production is overly broad and burdensome and argues that, in several cases, courts did not require production of such information until after the FLSA class was conditionally certified. However, the cases Hat World cites for this proposition are inapposite, particularly when plaintiffs in this case do not require any identifying information concerning the other potential class members prior to certification. For example, *Hatch v. Reliance Insurance Company*,[8] does not hold that "discovery of putative class members' identities is wholly improper," as Hat World asserts. Rather, the court in that case declined to allow a Rule 34 request to a non-party for similarly situated investors to solicit support for an attorney's efforts to certify a Rule 23 class where the attorney in question had acted improperly. Also, *Heckler v. DK Funding* does not prohibit pre-certification discovery concerning potential class members, but only that plaintiffs' notice needed to be edited to reflect all of the proposed claims.[9] In *Jones v. Casey's General Stores*, the court entered a protective order restricting contact with putative class members because there was specific evidence in the record that plaintiffs' lawyers had engaged in unethical

---

[8]758 F.2d 409, 416 (9th Cir. 1985).
[9]592 F. Supp.2d 777, 780 (N.D. Ill. 2007).

contact with putative class members, a factor wholly missing in this case.[10] Then there is *Kernats v. Comcast,* which is not a case brought under the FLSA.[11] Finally, Hat World cites *Knutson v. Blue Cross and Blue Shield of Minnesota,*[12] *Palmer v. Convergys Corporation,*[13] and *Stephens v. Erosion Containment Management, Inc.*[14] These cases do not hold that such discovery in an FLSA context is prohibited but, rather, that it must be for some other reason than facilitating notice to potential plaintiffs.

In this case, plaintiffs argue persuasively that the payroll information concerning hours worked and employees supervised is relevant to define the class and identify how many similarly situated employees exist. Courts routinely have permitted this type of pre-certification discovery for these purposes.[15] Plaintiffs have proffered several ways this information could be gathered without placing an undue burden on Hat World. Moreover, as the district judge aptly noted in her denial of Hat World's motion to dismiss, this information must be maintained by Hat World to comply with FLSA requirements and, therefore, should not be costly or burdensome to produce.

The parties are ordered to meet and confer within seven days of this Order concerning how plaintiffs are to be provided with sufficient information to determine the time spent by employees identified as managers by Hat World supervising other employees' work. If the parties cannot reach

---

[10] 517 F. Supp.2d 1080, 1087 (S.D. Iowa 2007); *see also Hamm v. TBC Corp.,* 07-80829, 2009 WL 289822, *15 (S.D. Fla. Feb. 3, 2009), which was also cited by Hat World but is factually distinct. *Hamm* involves misconduct on the part of plaintiffs' attorneys. There is no allegation here that plaintiffs, who are not even asking for contact information for these employees, have behaved unethically vis-a-vis putative class members.

[11] 2010 WL 8742753 (N.D. Ill. January 14, 2010).

[12] 254 F.R.D. 553 (D. Minn. 2008).

[13] 2011 WL 1326183 (M.D. Ga. April 6, 2011).

[14] 2008 WL 2157095 (M.D. Fla May 21, 2008).

[15] *See, e.g., Allard v. Post Road Entertainment*, 2012 WL 951917 (D. Conn. March 20, 2012); *Allen v. Mill-Tel, Inc*, 283 F.R.D. 631 (D. Kansas April 18, 2012), *Whitehorn v, Wolfgang's Restaurant,* 2010 WL 2362981 (S.D.N.Y. June 14, 2010).

agreement, they are to contact the Court for further guidance consistent with this order.

**IT IS SO ORDERED.**

Date: April 29, 2013

                                            Susan E. Cox
                                            U.S. Magistrate Judge